IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| **405 ARAPAHOE, LLC** § | | **CIVIL ACTION NO.5:19-cv-486** |
| *Plaintiff*, § | | |
| § | | |
| vs. § | | |
| § | | |
| **MONTEREY RESOURCES, LLC ET AL.** § | | |
| *Defendants*. § | | |
| § | | |

### DEFENDANTS' ANSWER, COUNTERCLAIM FOR INJUNCTIVE RELIEF, AND §9:5135 REQUEST FOR INSTRUCTIONS

### ANSWER

NOW INTO COURT, THROUGH UNDERSIGNED COUNSEL, come Defendants Monterey Resources, LLC and Green Wheel, LLC (collectively "Defendants") who in response to the Petition for Executory Process and for Ex Parte Appointment of Keeper filed by Plaintiff 405 Arapahoe, LLC, state as follows:

Defendants deny each and every allegation of the Petition for Executory Process and for Ex Parte Appointment of Keeper and any allegations pled by reference, except as specifically admitted below. The paragraph numbers below reference the paragraph number of the Petition for Executory Process and for Ex Parte Appointment of Keeper.

1. Defendants do not believe a response is required. To the extent a response is required, denied.

2. Defendants deny the allegations of this paragraph.

3. Defendants do not believe a response is required. To the extent a response is required, denied.

4. Defendants do not believe a response is required. To the extent a response is required, denied.

5. Defendants do not believe a response is required. To the extent a response is required, denied.

6. Defendants do not believe a response is required. To the extent a response is required, denied.

7. Defendants do not believe a response is required. To the extent a response is required, denied.

8. Defendants do not believe a response is required. To the extent a response is required, denied.

9. Defendants do not believe a response is required. To the extent a response is required, denied.

10. Defendants do not believe a response is required. To the extent a response is required, denied.

11. Defendants do not believe a response is required. To the extent a response is required, denied.

12. Defendants do not believe a response is required. To the extent a response is required, denied.

13. Defendants do not believe a response is required. To the extent a response is required, denied.

14. Defendants do not believe a response is required. To the extent a response is required, denied.

15. Defendants do not believe a response is required. To the extent a response is required, denied.

16. Defendants do not believe a response is required. To the extent a response is required, denied.

17. Defendants do not believe a response is required. To the extent a response is required, denied.

18. Defendants do not believe a response is required. To the extent a response is required, denied.

19. Defendants do not believe a response is required. To the extent a response is required, denied.

20. Defendants do not believe a response is required. To the extent a response is required, denied.

21. Defendants do not believe a response is required. To the extent a response is required, denied.

22. Defendants do not believe a response is required. To the extent a response is required, denied.

23. Defendants do not believe a response is required. To the extent a response is required, denied.

24. Defendants do not believe a response is required. To the extent a response is required, denied.

25. Defendants do not believe a response is required. To the extent a response is required, denied.

26. Defendants do not believe a response is required. To the extent a response is required, denied.

27. Defendants do not believe a response is required. To the extent a response is required, denied.

28. Defendants do not believe a response is required. To the extent a response is required, denied.

29. Defendants do not believe a response is required. To the extent a response is required, denied.

30. Defendants do not believe a response is required. To the extent a response is required, denied.

31. Defendants do not believe a response is required. To the extent a response is required, denied.

32. Defendants do not believe a response is required. To the extent a response is required, denied.

33. Defendants do not believe a response is required. To the extent a response is required, denied.

34. Defendants do not believe a response is required. To the extent a response is required, denied.

35. Defendants do not believe a response is required. To the extent a response is required, denied.

36. Defendants do not believe a response is required. To the extent a response is required, denied.

## PRAYER

This Paragraph contains conclusions of law and Plaintiff's prayer for relief for which no response is required. To the extent a response is required, Defendants deny the allegations contained in this Paragraph listed I through VIII.

## DEFENDANTS' COUNTERCLAIM FOR PERMANENT INJUNCTIVE RELIEF

NOW INTO COURT, THROUGH UNDERSIGNED COUNSEL, come Counter-Plaintiffs Monterey Resources, LLC ("Monterey") and Green Wheel, LLC ("Green Wheel") (collectively "Counter-Plaintiffs") who hereby file this Counterclaim for Permanent Injunctive Relief against Plaintiff and Counter-Defendant 405 Arapahoe, LLC ("Arapahoe") and would show as follows:

## PARTIES

1. Monterey is a foreign limited liability company and citizen of Texas with a principal place of business in Dallas, Texas. Monterey is registered to do business in Louisiana.

2. Green Wheel is a foreign limited liability company and citizen of Texas with a principal place of business in Dallas, Texas. Green Wheel is registered to do business in Louisiana.

3. Arapahoe is a foreign limited liability company and citizen of New York and Delaware with a principal place of business in New York. Arapahoe is not registered to do business in Louisiana.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## BACKGROUND

6. Monterey and Green Wheel own and operate producing and non-producing mineral interests, including oil and gas wells, in Louisiana ("Mineral Interests"). On May 15, 2018, Counter-Plaintiffs (as borrowers) entered into an Amended and Restated Credit Agreement (the "Credit Agreement") with Counter-Defendant (as administrative agent for the lenders), under which the lenders agreed to advance a principal amount of $15,000,000.00 to Counter-Plaintiffs. The $15,000,000.00 principal loan amount was evidenced by three promissory notes.

7. As security under the Credit Agreement, Counter-Plaintiffs executed two mortgages ("Mortgages") in favor of Counter-Defendants covering the Mineral Interests. Defendants also granted Plaintiff a security interest in certain movable (personal) property (including equipment, machinery, and supplies) related to the mortgaged property.

8. Counter-Plaintiffs were obligated under the Credit Agreement to remit all gross proceeds from the Mineral Interests' production, including third-parties' royalty and working interest revenues, to a deposit account controlled by Plaintiff (the "Lockbox Account") and to direct "all account debtors and royalty payors" to remit all payments due to Counter-Plaintiffs to the Lockbox Account. The funds in the Lockbox Account were to be used to pay vendors for services necessary to Counter-Plaintiffs' Louisiana operations, as well as royalties to Louisiana landowners and maintenance payments to Louisiana lessors.

9. The Credit Agreement itself mandated Counter-Plaintiffs to make such payments:

- Section 5.05(a): Defendants are required to "operate [the Mineral Interests] . . . in a careful and efficient manner in accordance with the customary practices of the industry and in compliance with all applicable contacts and agreements and in compliance with all applicable Governmental Requirements. . . ."

- Section 5.05(c): Defendants are required to "promptly pay and discharge, or use commercially reasonable efforts to cause to be paid and discharged, all material

delay rentals, royalties, expenses and indebtedness accruing under the leases or other agreements affecting or pertaining to [the Mineral Interests]. . . ."

- Section 5.05(d): Defendants are required to "promptly perform or use commercially reasonable efforts to cause to be performed, in accordance with industry standards, the material obligations required by each and all of the assignments, deeds, leases, sub-leases, contracts and agreements affecting its interests in [the Mineral Interests]. . . ."

10. Instead, beginning September 27, 2018, Counter-Defendant took total control of all Lockbox Account funds, refused to pay critical vendors for operation of the Mineral Interests, refused to pay royalty and working interest owners, and refused to pay lease maintenance payments. Essentially, Counter-Defendant took control of Counter-Plaintiffs' purse strings and thereby controlled Counter-Plaintiffs' operational decision-making.

11. Counter-Plaintiffs made repeated requests and took efforts to ensure they would be able to continue to meet their Section 5 obligations under the Credit Agreement and their obligations as an operator under Louisiana law.

12. Despite these efforts, Counter-Defendant interfered with and thwarted Counter-Plaintiffs at every turn, effectively destroying any possibility for Counter-Plaintiffs to operate the Louisiana Mineral Interests prudently. Such interference occurred not only through the refusal to release third-party funds held in the Lockbox Account, specifically royalty and other working interest owner funds, but also by Counter-Defendant's refusal to allow Lockbox Account funds to be used to pay operating expenses associated with the Mineral Interests. .

13. After bleeding the Lockbox Account for six months, Counter-Defendant filed a Petition for Executory Process and for Ex Parte Appointment of Keeper on March 8, 2019 in the Second Judicial District Court of Claiborne Parish, Louisiana ("Petition").

14. The Claiborne Parish court issued an Order for writ of seizure and sale ("Writ") the same day. The Order also appoints Plaintiff or its Designee as Keeper. The Sheriff's sale of Defendants' property was scheduled for July 24, 2019.

15. Because Counter-Defendant did not strictly comply with the procedures necessary to obtain the Writ, and because Counter-Defendant is preventing the exercise of reasonable care in the preservation of the collateral at issue, Counter-Plaintiffs seek a permanent injunction enjoining any further seizure, enjoining the scheduled sale, and requiring reasonable care in the management and preservation of the collateral.

## CLAIM FOR PERMANENT INJUNCTIVE RELIEF

16. A party seeking a permanent injunction "must show (1) success on the merits; (2) the failure to grant the injunction will result in irreparable injury; (3) the injury outweighs any damage that the injunction will cause the opposing party; and (4) the injunction will not disserve the public interest. Because Counter-Plaintiffs meet all four elements, a permanent injunction should issue in this case.

### A. THE MERITS

17. Counter-Defendant failed to follow Louisiana procedure to obtain the Writ; therefore Counter-Plaintiffs are entitled to enjoin the Writ as provided by Louisiana law.

- First, Arapahoe did not proceed in the proper venue with respect to a substantial portion of the property at issue.

- Second, Arapahoe relied on improperly authenticated documents in contravention of a condition on the confession of judgment in the mortgages.

- Third, Arapahoe did not have the capacity to sue in Louisiana state court in the first place because it was conducting business in Louisiana but was not registered in the state.

18. Moreover, Counter-Defendant is preventing the exercise of reasonable care in the management and preservation of the collateral at issue, ensuring the irreparable loss of valuable mineral lease interests, and draining Counter-Plaintiffs' equity interest.

### a. *Improper Venue*

19. Louisiana Code of Civil Procedure article 2633 provides that an "executory proceeding to enforce a mortgage may be brought either in the parish *where the property is situated* or as provided in the *applicable provision* of Article *42 only*." La. Code Civ. P. art. 2633 (emphasis supplied). The applicable provision of Article 42 provides venue is proper against a foreign LLC "in the parish where its principal business establishment is located as designated in its application to do business in the state." La. Code Civ. Proc. art. 42(5). For Monterey that is East Baton Rouge Parish. For Green Wheel that is Orleans Parish. Therefore, venue for an executory proceeding is proper against these Defendants in East Baton Rouge Parish and Orleans Parish, respectively. Arapahoe did not file its executory proceeding in either parish so Arapahoe was required to file its proceeding in the parish where the property is located.

20. Instead, Arapahoe filed its executory proceeding in Claiborne Parish, yet proceeded against property located not only in Claiborne Parish but also in Caddo, Webster, and Union Parishes.

21. The venue provision for an executory process proceeding is *"where the property is situated*." La. Code Civ. P. art. 2633. That venue provision must be strictly construed. A suit

to seize property in Caddo, Webster, and Union Parishes must have been brought in those parishes.

### b. Counter-Defendant *Failed to Meet a Condition for the Confession of Judgment*

22. Louisiana law regarding executory process requires certain authentication procedures. However, in this case, the parties' Mortgages impose additional authentication requirements for "Declarations of Fact" that are used to support an executory process action. *See* Ex. E, Mortgages § 7.02(f). Specifically, the Mortgages require that all declarations of fact "by a person declaring such facts to lie within his knowledge," in support of an action for executory process shall be authenticated by two witnesses and a notary public.

23. Counter-Defendant relied on three "Declarations of Fact" in support of is claim for executory process: (a) an Affidavit of Verification and Correctness of Account, (b) a Certificate of Authenticity of Promissory Note Dated May 15, 2018 ($2,925,000), and (c) a Certificate of Authenticity of Promissory Note Dated May 15, 2018 ($150,000).

24. None of these documents was properly authenticated under the terms of the Mortgages. The Affidavit of Verification and Correctness of Account included only *one* witness signature and a notary. The Certificates of Authenticity did not include any witnesses and no notary. These are all clearly declarations of fact that were required to be properly authenticated in accordance with the terms of Mortgage. Indeed, the Affidavit of Verification and Correctness of Account even includes a space for a second witness to sign, but that space is blank.

### c. **Failure to Register to Do Business in the State of Louisiana**

25. Counter-Defendant is a foreign LLC not registered to do business in the State of Louisiana.

{HD102533.1} 10

26. Louisiana Revised Statute § 12:1354 provides that no foreign LLC "transacting business in this state shall be permitted to present any judicial demand before any court of this state unless it has been authorized to transact such business"—that is, unless it has received a certificate of authorization from the Louisiana Secretary of State.

27. Because Counter-Defendant violated this prerequisite when it obtained the Writ, the Writ was improperly granted, warranting injunctive relief.

28. Counter-Defendant conducted business in Louisiana as a result of the Credit Agreement. As described above, through its control of the Lockbox Account, Counter-Defendant controlled the purse strings of Counter-Plaintiffs' oil and gas operations. Thus, Counter-Defendant controlled all decisions regarding well maintenance, work-over operations, recompletion, sidetracking, lease maintenance, royalty payment, *etc.* for the Mineral Interests. Counter-Defendant essentially took over Counter-Plaintiffs' operations. This activity goes far beyond the typical "[s]ecuring or collecting debts or enforcing any rights in property securing the same," which are specifically identified as acts not considered transacting business in the state. *See* La. R.S. § 12:302(G).

29. Moreover, Counter-Defendant was *not* engaged in interstate commerce. The Mortgages secure Louisiana property. While the Lockbox Account was not located in Louisiana, all the funds in the Lockbox Account were derived from Louisiana. The funds were marked to pay Louisiana lessors and landowners and Louisiana vendors who provided services related to the day-to-day operation of Counter-Plaintiffs' oil and gas wells located in Louisiana. The transactions underlying Counter-Defendant's original Petition are thus local transactions, not interstate commerce. Counter-Defendant was conducting business in Louisiana and was

therefore required to register with the Secretary of State before commencing the executory process action in a Louisiana state court.

30. Counter-Defendant was conducting business in Louisiana, and it improperly obtained the Writ because it did not have capacity to sue in Louisiana state court. Thus the Writ should be enjoined.

### 2. Duty of Care: Counter-Defendant Has Interfered with the Reasonable Maintenance of the Collateral

31. Secured parties who take control of movable property and mortgagees who take control of mortgaged property are subject to certain duties of care with respect to the maintenance and management of the seized assets. Secured parties must "use reasonable care in the custody and preservation of collateral in the secured party's possession."

32. As to mineral mortgages, Louisiana law specifically provides that the court shall direct the appointment of Keeper to administer, operate, and protect the property and the parties' interest, including the debtor's interest. *See* La. R.S. §§ 9:5133, 9:5135.

33. The court did direct the appointment of a Keeper – the "[Counter-Defendant] or its designee." Counter-Defendant, who is an equity lending firm from New York, naturally designated a local contractor operator to serve as its designee to fulfill this role. Yet, Counter-Defendant continues to prevent the payment of royalties owed to third parties, payments necessary to the maintenance of the leases, and payments to vendors necessarily to properly maintain and operate the property.

34. A Keeper has been appointed, but that that Keeper is merely performing services for a fee under a contract with Counter-Defendant, and has not agreed nor undertaken the duties, responsibilities, and obligations of the operator of record.

35. The duties of the operator set out in the Credit Agreement, leases, unit orders, *etc.* remain unperformed due to the action and/or inaction of Counter-Defendant. Counter-Defendant has jeopardized the productivity of the Mineral Interests by preventing the required payments to landowners, working interest owners and vendors, and refusing to allow the necessary oversight to maintain and preserve the assets related to Counter-Plaintiffs' operations.

36. The potential loss of leases and other detrimental impacts to Counter-Plaintiffs' operations as a result of Counter-Defendant's unreasonable interference with the management of the Mineral Interests are irreparable.

37. Accordingly, Counter-Defendant should be enjoined from continuing to interfere with the Mineral Interests. Further, Arapahoe and/or the Keeper should be ordered or instructed to immediately make the outstanding royalty payments, lease maintenance payments, and vendor payments.

### B. COUNTER-PLAINTIFFS FACE A SUBSTANTIAL THREAT THAT THEY WILL SUFFER IRREPARABLE INJURY IF THE INJUNCTION IS NOT GRANTED

38. If Counter-Plaintiffs are unable to obtain injunctive relief, they will certainly suffer irreparable harm. Counter-Defendant's actions—*i.e.*, Counter-Defendant's interference with payment of royalties, other working interests, and operating expenses, and interference with the responsible operation of the Mineral Interests—have already caused Counter-Plaintiffs' oil and gas interests irreparable loss.

39. As leases are lost and the properties not operated in accordance with industry standards, the potential for Counter-Plaintiffs to continue operations will be destroyed. Counter-Plaintiffs' more than $1 million in equity will be forever lost and Counter-Plaintiffs will be exposed to new financial liabilities for a deficiency of Counter-Defendant's making. Further, a

Sheriff's sale of the mortgaged property would compromise Counter-Plaintiffs' relationships with vendors, landowners, lessors, and working interest owners, and would dramatically and irreversibly impede Counter-Plaintiffs' ability to operate their business.

### C. COUNTER-PLAINTIFFS' THREATENED INJURY OUTWEIGHS THE THREATENED HARM TO COUNTER-DEFENDANT

40. The harm Counter-Plaintiffs will suffer in the absence of injunctive relief far outweighs the harm Counter-Defendant will face if the Court grants an injunction. Indeed, a decision by the Court to enjoin the Writ would cause no harm to Counter-Defendant at all. Counter-Defendant would simply be required to proceed according the law.

### D. GRANTING THE INJUNCTION WILL NOT DISSERVE THE PUBLIC INTEREST.

41. Granting the requested injunction will not disserve the public interest; on the contrary, it will serve the public interest. There can be no doubt that it serves the public interest for courts to ensure that the "extraordinary procedure" of executory process is permitted only in strict accordance with the law.

42. Because executory process is so harsh a remedy, strict procedural compliance is necessary lest the procedure give way to "extreme abuse." This concern is reflected in Louisiana's statutory standard for obtaining injunctive relief, which requires a defendant to show only that "the procedure required by law for an executory proceeding has not been followed." La. Code Civ. Proc. art. 2751. If the defendant makes such a showing, he "may arrest the seizure and sale of the property by injunction." *Id.* Such is the relief requested here.

43. Moreover, the statutory law cited demonstrates it has long been recognized that a mortgagee-in-possession should not be permitted to waste the collateral it holds. This is clearly a

policy that is meant to protect the public interest by ensuring a minimum standard of fairness in dealings between the mortgagor and mortgagee.

### COUNTER-PLAINTIFFS' SECTION 9:5135 REQUEST FOR INSTRUCTIONS

44. Counter-Defendant or its Designee has been appointed as Keeper pursuant to Louisiana Revised Statutes § 9:5131 *et seq.*

45. A Keeper appointed pursuant to Louisiana Revised Statutes § 9:5131 *et seq.*, Counter-Defendant has a duty to fully administer and operate the mineral rights and wells located on the subject property in the ordinary course of business and to produce and dispose of minerals accruing to such interests.

46. Counter-Defendant is preventing the payment of royalties owed to third parties, payments necessary to the maintenance of the leases, and payments to vendors necessarily to properly maintain and operate the property.

47. A Keeper has been appointed, but that that Keeper is merely performing services for a fee under a contract with Counter-Defendant, and has not agreed nor undertaken the duties, responsibilities, and obligations of the operator of record. Thus, the duties of the operator set out in the Credit Agreement, leases, unit orders, *etc.* remain unperformed due to the action and/or inaction of Counter-Defendant.

48. Counter-Defendant has jeopardized the productivity of the Mineral Interests by preventing the required payments to landowners, working interest owners and vendors, and refusing to allow the necessary oversight to maintain and preserve the assets related to Counter-Plaintiffs' operations.

49. When a Keeper is appointed, the Court may issue orders or instructions to protect the property and the parties' interest, including the debtor's interest, on application by a party.

*See* La. R.S. §§ 9:5133, 9:5135 ("court may issue orders or instructions deemed necessary or appropriate for the protection of the property and the interest of the parties therein").

50. Counter-Plaintiffs request that the Court order or instruct Counter-Defendant and/or the Keeper to immediately make the outstanding royalty payments, lease maintenance payments, and vendor payments.

51. Counter-Plaintiffs request that the Court order or instruct Counter-Defendant and/or the Keeper to henceforth make proper and timely payments to royalty interest holders, payments necessary for lease maintenance, and payments to vendors for reasonable and necessary operational expenses.

**WHEREFORE** Monterey Resources, LLC and Green Wheel, LLC pray that the Court grant this motion for permanent injunction and enter an Order permanently enjoining any further seizure under the Writ, enjoining the scheduled sale, and requiring Plaintiff to refrain from interfering with the exercise of reasonable care in the management and preservation of the collateral and for such other relief deemed appropriate under the circumstances.

Respectfully submitted,

**JONES WALKER LLP**

/s/ Michael B. Donald
MICHAEL B. DONALD (Bar No. 16891)
JOSHUA A. NORRIS (Bar No. 32912)
811 Main Street, Suite 2900
Houston, Texas 77002
Telephone No.: (713) 437-1800
Facsimile No.: (713) 437-1810
Email: mdonald@joneswalker.com

MARK A. MINTZ (Bar No. 31878)
201 St. Charles Avenue, 51st Floor
New Orleans, LA 70170-5100
Tel: (504) 582-8000
Fax: (504) 582-8583
Email: mmintz@joneswalker.com
*Attorneys for Defendants Monterey Resources, LLC and Green Wheel, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of April 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record who have registered to receive electronic service, and that all other counsel of record have been served by e-mail, by facsimile, or by depositing same in the United States Mail.

R. Joseph Naus (BR# 17074)
John M. Madison, Jr. (BR# 8836)
Wiener, Weiss & Madison
330 Marshall St., Suite 1000 (71101)
P.O. Box 21990
Shreveport, Louisiana 71120-1990
Tel.: (318) 226-9100
Fax: (318) 424-5128
Email: rjnaus@wwmlaw.com
Email: jmadison@wwmlaw.com

                                              /s/Michael B. Donald
                                              Michael B. Donald